The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

A.P. and K.P., Parents of I,P., a disabled minor

    Plaintiffs,

v.

CLOVER PARK SCHOOL DISTRICT,

    Defendant.

NO. 25-cv-5200-BJR

**ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS**

## I.  INTRODUCTION

This matter arises from an administrative due process claim under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.* After being awarded partial relief by an administrative law judge at the conclusion of a due process hearing, Plaintiffs filed a complaint in this Court seeking recovery of attorney fees as the prevailing party. Compl., ECF No. 1. Plaintiffs have moved for summary judgment on attorneys' fees and costs totaling $197,933.92, "or such updated amount as may be established through supplemental declaration." Mot. 17, ECF No. 28. Having reviewed the materials[1] and the relevant legal authorities, the Court will grant

---

[1] Including the motion, ECF No. 28; Defendant's response in opposition, ECF No. 33; and Plaintiffs' reply, ECF No. 35; together with attached declarations and exhibits.

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 1

Plaintiffs' motion in part, finding that they are entitled to fees and costs, although not in the amount requested. The reasoning for the Court's decision follows.

## II.    BACKGROUND

### A.    Brief Overview of the IDEA

"The IDEA is a comprehensive educational scheme" that confers on students with disabilities "a substantive right to public education." *J.W. ex rel. J.E.W. v. Fresno Unified Sch. Dist.*, 626 F.3d 431, 432 (9th Cir. 2010) (quoting *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1300 (9th Cir. 1992)). The IDEA's primary purpose is "to ensure that all children with disabilities have available to them a free appropriate public education . . . designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). "This purpose is achieved through the development of an individualized education program ('IEP') for each child with a disability." *Ojai Unified School Dist. v. Jackson*, 4 F.3d 1467, 1469 (9th Cir. 1993) (citing 20 U.S.C. § 1401(a)(18)(D)). "The IEP is 'the centerpiece of the statute's education delivery system'" and "must aim to enable the child to make progress" that is "appropriate in light of the child's circumstances." *Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1*, 580 U.S. 386, 391, 399-400 (2017) (quoting *Honig v. Doe*, 484 U.S. 305, 311 (1988)). While school districts are not required to "maximize each child's potential," they must provide a "basic floor of opportunity." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 198, 200 (1982).

The IEP is developed annually by a team that includes a representative of the local educational agency, the child's teacher, parents or guardians, and, if appropriate, the child. *Ojai*, 4 F.3d at 1469 (citing 20 U.S.C. § 1414(a)(5)). The IEP consists of a written document that must

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 2

include a statement of the child's academic and function performance, goals and how those goals will be measured, and the type and amount of services to be provided, among other requirements, and must be reviewed at least annually. *Fresno Unified*, 626 F.3d at 432.

Parents of children who qualify for services under the IDEA may bring procedural or substantive challenges to their child's IEP. A challenge regarding the implementation of an IEP—such as the school's failure to provide services that are listed in the IEP—is typically considered a procedural challenge under the IDEA. In contrast, a challenge regarding the contents of the IEP—such as the failure to include appropriate goals, services, or accommodations necessary to meet the child's unique needs—is considered a substantive challenge. *See Fresno Unified*, 626 F.3d at 432. "A procedural violation denies a free appropriate public education if it results in the loss of an educational opportunity, seriously infringes the parents' opportunity to participate in the IEP formulation process or causes a deprivation of educational benefits." *J.L. v. Mercer Island Sch. Dist.*, 592 F.3d 938, 953 (9th Cir. 2009). A substantive violation occurs if an IEP is not reasonably calculated to enable the child to receive educational benefits. *Fresno Unified*, 626 F.3d at 432.

The IDEA provides that the district court, "in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B).

### B.    Factual & Procedural Background

Plaintiffs are the parents and guardians of I.P., a minor student diagnosed with Quadriplegic Cerebral Palsy, Intractable Epilepsy with Implant Vagal Nerve Simulator, Severe Intellectual Disability, Cortical Visual Impairment, and Adrenal Insufficiency. Compl. ¶ 2.1. I.P. was enrolled in the Clover Park School District ("the District") in 2017, where she was deemed eligible for

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 3

specially designed instruction and related services due to her multiple disabilities. *Id.* ¶¶ 4.1, 4.5. In 2020, in response to the closure of public schools due to the COVID-19 pandemic, I.P.'s instruction changed to solely virtual learning. *Id.* ¶¶ 4.12-4.15. Plaintiffs argue that I.P.'s visual and cognitive disabilities made virtual learning ineffective and educationally meaningless. Mot. 2.

According to Plaintiffs, the Clover Park School District repeatedly disregarded both medical recommendations and its legal obligations, until ultimately, in February 2022, I.P.'s parents were forced to file a due process hearing request under the IDEA to secure the services to which I.P. was entitled. *Id.*; *see also* Hr'g Req., Ex. B, ECF No. 11. A hearing was held on April 18-20, 27-28, and June 8, 2022, and the Administrative Law Judge ("ALJ") issued Findings of Fact, Conclusions of Law, and Order on August 26, 2022. ALJ Decision, Ex. A, ECF No. 11. The ALJ found partially in favor of Plaintiffs and partially in favor of the District. *Id.*

The District continued to resist providing I.P. services in the home, which led to a separate due process hearing. Mot. 9, n.1; Reply 3, 8; McBroom Decl. ¶ 24. The second hearing request was filed in September 2023, seeking in-person instruction in the family home. McBroom Decl. Ex. C, Feeney Decl. ¶¶ 8-9, ECF No. 28-1. The ALJ issued a decision in July 2024, finding that I.P. was denied a free and appropriate public education, and the District was ordered to deliver educational services in person in the family home for the 2024-25 school year. *Id.* ¶¶ 22-23. A petition for fees was filed in this Court in August 2024, presided over by Magistrate Judge Tsuchida. *See A.P. et al. v Clover Park School Dist.*, Civil Case No. 3:24-cv-5651-BAT (Aug. 7, 2024) ("Related Case"). In December 2024, the District entered into a settlement agreement with Plaintiffs in the Related Case for their attorneys' fees stemming from the ALJ's decision in the 2024 due process proceeding. McBroom Decl. ¶ 24; Mot. Set Aside Default 2, ECF No. 15.

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 4

On March 11, 2025, Plaintiffs filed their complaint in this Court seeking attorneys' fees. About two months later, they moved for entry of default, asserting that the Clover Park School District had failed to timely answer or otherwise defend against Plaintiffs' Complaint. Mot. Default, ECF No. 7. Default was granted, ECF No. 8, but Plaintiffs' motion for default judgment was denied without prejudice for failure to provide sufficient evidence to support the requested attorneys' fees, ECF No. 13. Subsequently, default was set aside on this Court's finding good cause to do so, ECF No. 23, and Plaintiffs' second motion for default judgment was stricken as moot, ECF No. 23.

Plaintiffs now ask the Court to award the full amount of their attorneys' fees and costs as the prevailing party in the due process hearing, as well as their fees incurred to prosecute this fee petition.

### III.   LEGAL STANDARD

Under 20 U.S.C. § 1415(i)(3)(B), a district court has the discretion to award reasonable attorneys' fees to parents who are the prevailing party. The party seeking attorneys' fees has the initial burden to produce "'satisfactory evidence' that the fee requested is reasonable." *Beauchamp v. Anaheim Union Sch. Dist.*, 816 F.3d 1216, 1224-25 (9th Cir. 2016) (quoting *United States v. $28,000 in U.S. Currency*, 802 F.3d 1100, 1105 (9th Cir. 2015)). The court's evaluation follows a strict structure. Before calculating any figures, the court verifies if the plaintiff achieved success on a significant issue that brought about some of the benefit sought. *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir. 2007). "The prevailing party inquiry does not turn on the magnitude of the relief obtained." *Id.* (citing *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)).

If a plaintiff achieves only partial success, courts analyze the "degree of success" achieved in order to determine the amount of attorneys' fees plaintiff is entitled to. *Aguirre v. Los Angeles*

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 5

*Unified Sch. Dist.*, 461 F.3d 1114, 1119-20 (9th Cir. 2006) (applying *Hensley v. Eckerhart*, 461 U.S. 424 (1983) to IDEA claims). "A reduced award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." *Hensley*, 416 U.S. at 440.

For the fee calculation, courts apply the lodestar method, multiplying the hours counsel reasonably expended by a reasonable hourly market rate. *Id.* at 424; *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 982 (9th Cir. 2008). In determining a reasonable hourly rate, courts consider "the experience, skill, and reputation of the attorney[s] requesting fees." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986). "[T]he district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Id.* at 1210-11; *see also* 20 U.S.C. § 1415(i)(3)(C) ("Fees awarded . . . shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho*, 523 F.3d at 979.

The statutory framework explicitly prohibits the application of any bonus, multiplier, or enhancement to the lodestar calculation in IDEA cases, meaning the lodestar figure serves as a strict ceiling. *See* 20 U.S.C. § 1415(i)(3)(C) ("No bonus or multiplier may be used in calculating the fees awarded."). Additionally, the statute prohibits the recovery of attorneys' fees for certain services, including legal work performed relating to IEP team meetings, unless such meeting is convened as a result of an administrative proceeding or judicial action, and for services performed subsequent to the time of a written settlement offer if the court finds that the relief finally obtained by the parents is not more favorable than the offer of settlement. 20 U.S.C. § 1415(i)(3)(D).

Under well-established Ninth Circuit precedent, the court scrutinizes the billing records to exclude hours that are excessive, redundant, or otherwise unnecessary, and it will reduce the fee

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 6

award for improper billing practices such as block billing, vague time entries, or clerical tasks billed at professional attorney rates. *See, e.g.*, *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (holding that block billing is a legitimate reason for a district court to reduce requested hours); *Davis v. City & Cnty. of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993) ("It simply is not reasonable for a lawyer to bill, at her regular hourly rate, for tasks that a non-attorney employed by her could perform at a much lower cost."); *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (noting that district courts should exclude hours that are excessive, redundant, or otherwise unnecessary (quoting *Hensley*, 461 U.S. at 434)).

## IV.  DISCUSSION

Plaintiffs assert that they incurred attorney fees totaling $157,036 in pursuing the underlying case, and additional attorneys' fees and costs have been incurred as they pursue payment in this action. Mot. 9-10. As of December 1, 2025, Plaintiffs report 463.9 hours have been expended for total fees of $197,284. *Id.* at 10. Plaintiffs report costs of $566.71 ($405 filing fee, $78.50 service of original complaint, and $83.21 service of the petition). McBroom Decl. ¶ 12, ECF No. 28-1. Plaintiffs state that total fees and costs, as of December 1, 2025, are $197,933.92.[2] *Id.* ¶ 13.

The Clover Park School District acknowledges that Plaintiffs are entitled to some fees for partially prevailing in the administrative proceeding but contend that the amount of fees sought are unreasonable, given their limited success. Opp'n 1. The District further argues that Plaintiffs fail to establish that their fees are consistent with prevailing rates for attorneys in the field with similar experience, and request that the Court reduce the amount of fees based on block-billed entries, time

---

[2] The Court notes that the sum of $566.71 and $197,284 is $197,850.71, a discrepancy of $83.21.

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 7

spent on non-recoverable tasks, excessive time spent on unsuccessful litigation efforts, and their rejection of settlement offers that were more favorable than the relief they obtained at the hearing. *Id.* at 1-2.

The Court accepts that Plaintiffs are the prevailing party and will address the reasonableness of Plaintiffs' fee request as follows: (1) hourly rate justification; (2) prohibited services; (3) billing infirmities; and (4) degree of limited or partial success.

### A.    Hourly rate justification

The hourly rates are tied to the Seattle-Tacoma metropolitan legal market and are evaluated based on the billing attorneys' specific years of specialized legal experience. Plaintiffs' counsel, Gregory A. McBroom, declares that he began his litigation career in 2002, and his standard hourly rate is $570. McBroom Decl. ¶ 4. Alexandre Gerard assisted in this matter; his hourly rate is $430, and he has practiced since 2022. *Id.* ¶ 20. Counsel provided declarations from attorneys Thomas B. Vertetis and Kerri W. Feeney, filed in the Related Case, confirming that rates between $350/hour and $600/hour are typical and reasonable for IDEA cases in the Western District of Washington. *Id.* ¶¶ 22-23; Exs. B, C[3]; *see also* McBroom Sec. Decl. Exs. D, E, F, ECF Nos. 36-4–36-6 (supporting attorney opinions regarding billing rates in complex civil-rights litigation). The declarations support Mr. McBroom's rate of $570 per hour, which he reduced to $430 per hour. *Id.* However, the declarations do not support Mr. Gerard's billing rate at $430 per hour. *Id.*

The District observes that Mr. Gerard had only three years of experience as an attorney at the time the work was performed, and assert that "Courts in this district have recognized that attorneys with this level of experience should be afforded more modest rates." Opp'n 6 (citing

---

[3] *See also* McBroom Sec. Decl. Ex. H, ECF No. 36-8 (Feeney declaration filed in the Related Case).

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 8

cases). The District's attorney represents that she has represented school districts in special education matters since 2007, and her hourly rate for work performed on behalf of school district ranged from $385 to $395. Winkelman Decl. ¶¶ 2-3, ECF No. 34. She also declares that the hourly rates in 2025 for associates at her law firm practicing special education law were as follows: "$240 for an associate admitted to the Washington State bar in 2024, $260 for an associate admitted to the Washington State bar in 2021, and $290 to $300 for an attorney admitted to the Washington State bar in 2016." *Id.* ¶ 4. Plaintiffs observed that in 2018, the undersigned judge approved hourly rates of $275 for a third-year associate, with hourly rates increasing since that time, and in May 2022, the Honorable Judge Benjamin Settle approved hourly rates between $350 and $600 for attorneys ranging from associate to managing partner. McBroom Decl. Ex. B at 5. Plaintiffs did not address Mr. Gerard's rate in their reply.

The Court observes that the work Mr. Gerard performed in this case began in February 2025 with drafting this fee petition, and he did not perform work in the IDEA due process litigation itself. Based on the information provided, the Court concludes that Mr. Gerard's hourly billing rate should be reduced to $300 per hour. Mr. Gerard's time entries totaled 115.7 hours for $49,751 based on a billing rate of $430 per hour. Based on a billing rate of $300 per hour, the amount is $34,710, which represents a reduction of $15,041.

**B.    Prohibited services**

The District contends that Plaintiffs' fees must be reduced for time billed related to a resolution session held on February 10, 2022, and for time billed after Plaintiffs rejected a written settlement offer that is more favorable than the relief they ultimately obtained. Opp'n 12.

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 9

### 1.      Resolution session

Under 20 U.S.C. § 1415(i)(3)(D)(iii), a resolution session conducted pursuant to section 1415(f)(1)(B) is categorized as a non-compensable event. The District objects to fee requests of $1,634 for a resolution session held on February 10, 2022; $559 for scheduling the resolution session and related discussions; $129 for communications regarding a resolution session; and $344 for settlement-related matters. Opp'n 12. The District also notes that time was recorded as spent on resolution proposals as part of three block-billed entries. *Id.* Plaintiffs did not address the District's objection in their reply.

The Court partly agrees with the District. Plaintiffs have not disputed that the resolution session held on February 10, 2022 was the statutory resolution session under subsection (f)(1)(B)(i), so the fee for the time spent inside that meeting is barred. Since Plaintiffs did not dispute the amount, the Court will accept that the full $1,634 was for time spent at the meeting. However, the remaining $1,032 for scheduling logistics, client communications, and separate settlement matters must be rejected. The statutory bar applies narrowly to the conduct of the session itself; it does not disqualify the necessary and routine legal work required to coordinate the session or independently negotiate a resolution.

### 2.      Settlement offer

Under 20 U.S.C. § 1415(i)(3)(D),

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if--
>
> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 10

(II) the offer is not accepted within 10 days; and

(III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

The District contends that it presented three separate written settlement offers to Plaintiffs' counsel more than 10 days prior to the first day of the hearing, and Plaintiffs ultimately were awarded fewer compensatory service hours than were included in the District's settlement offers. Opp'n 12-13; Winkelman Decl. ¶ 5, Ex. A.

Plaintiffs argue that the District cannot meet its burden to show that the settlement offers were more favorable than the relief finally obtained. Reply 5. They contend that the proffered settlement agreement "offered only conditional, forfeitable, and liability-free compromises," while the ALJ's order found IDEA violations and awarded compensatory education, which conferred prevailing-party status with fee-shifting. *Id.*

On March 7, 2022, the District offered compensatory services including 2.25 hours of occupational therapy ("OT"), 8.5 hours of services with a teacher of the visually impaired ("TVI"), 3.5 hours of communication services, 4 hours of physical therapy ("PT"), 1.75 hours of adaptive skills SDI, and 1.75 hours of cognitive SDI. Opp'n 2-3; Winkelman Decl. Ex A. It also offered to deliver a portion of the compensatory services in Plaintiffs' home. *Id.* The District updated its offer on March 14, 2022, which included reimbursement of a portion of Plaintiffs' attorneys' fees. *Id.* The settlement offer was again updated on April 5, 2022, offering the following: 8.5 hours of vision services, 1 hour and 40 minutes of occupational therapy, 3 hours and 20 minutes of physical therapy, 3.5 hours of communication services, 1.5 hours of adaptive skills SDI, and 1.5 hours of cognitive SDI. *Id.* The ALJ awarded compensatory education in the form of SDI as follows: 45 minutes of fine motor (OT); 45 minutes of gross motor (PT); 2.5 hours of vision services (TVI); 2.5 hours

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 11

communication services; 30 minutes cognitive development (special education teacher); 30 minutes of adaptive skills (special education teacher); and 45 minutes of gross motor (PT). ALJ Decision ¶¶ 98-99. The ALJ denied the Plaintiffs' request to require provision of the compensatory education services at home. *Id.* ¶ 100.

The District focuses primarily on the compensatory service hours awarded by the ALJ compared to the settlement offer. Based on a comparison of the raw numbers, the District's final settlement offer outpaced what the ALJ ultimately awarded. Indeed, by proceeding to the hearing, Plaintiffs' results reflect an overall 58.75% reduction in total compensatory hours for I.P., as demonstrated in the following table:

| Service Category | District's Initial Offer | District's Final Offer | Final ALJ Order | Net Loss at Hearing |
|---|---|---|---|---|
| Vision Services (TVI) | 8.5 hours | 8.5 hours | 2.5 hours | -6.0 hours |
| Occupational Therapy (OT) | 2.25 hours | 1.67 hours (1h 40m) | 0.75 hours (45m) | -0.92 hours |
| Physical Therapy (PT) | 4.0 hours | 3.33 hours (3h 20m) | 1.5 hours (45m + 45m) | -1.83 hours |
| Communication / Speech | 3.5 hours | 3.5 hours | 2.5 hours | -1.00 hour |
| Adaptive Skills SDI | 1.75 hours | 1.5 hours | 0.50 hours (30m) | -1.00 hour |
| Cognitive SDI | 1.75 hours | 1.5 hours | 0.50 hours (30m) | -1.00 hour |
| **Total Service Hours** | **21.75 hours** | **20.00 hours** | **8.25 hours** | **-11.75 hours** |

Additionally, the District offered partial home delivery of the services, which the ALJ denied, and although the ALJ found two violations of the IEP, there was no finding that I.P. was denied a free appropriate public education. Winkelman Decl. Ex A; ALJ Decision 62-64. The District also included a provision to reimburse $5,000 of the Plaintiffs' accrued attorneys' fees. Winkelman Decl. Ex A. In return, Plaintiffs were to agree to dismiss the due process hearing request

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 12

with prejudice within 14 days of execution of the agreement, and release all claims they "had or may have had" as of the date of the agreement. *Id.*

Under 20 U.S.C. § 1415(i)(3)(E), a parent is completely exempt from post-offer fee limits if they are "substantially justified" in rejecting the proposal. Plaintiffs argue that accepting the settlement offer would have required them to surrender their statutory rights, agreed that no violation had occurred, and subjected them to heavy conditions subject to forfeiture, whereas the ALJ award had no expiration dates or waiver provisions. Reply 6-7. Plaintiffs also contend that the offer of $5,000 in attorney fees and costs does not compare favorably to their entitlement to reasonable attorney fees as the prevailing party. *Id.* at 7-9. The Court agrees. The Court does not consider the educational hours in a vacuum but evaluates the entire package offered in settlement. Forcing a parent to choose between some additional hours of conditional compensatory services and a massive debt to their legal counsel qualifies as substantial justification. By capping the attorneys' fees at $5,000, the District essentially restricted its offer, making it qualitatively less favorable than going to a hearing where the right to petition the court for a true lodestar award is preserved. The Court concludes that Plaintiffs were justified in seeking a judicial order, and the post-offer fee bar does not apply.

### C.    Billing infirmities

Courts require contemporaneous, detailed, and highly transparent records to satisfy the burden of proving that hours were "reasonably expended." *Hensley*, 461 U.S. at 434. The District contends that Plaintiffs' fees should be reduced based on block billing and ask the Court to reduce any block-billed entries by 20%. Opp'n 10-11. The District also complains that the fees related to the Plaintiffs' fee petition are unreasonable. *Id.* at 11-12.

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 13

### 1.    Block Billing

Block-billing is "a time-keeping method by which each lawyer . . . enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks." *Welch*, 480 F.3d at 945 n.2. Commingling multiple distinct tasks into a single time entry is penalized because it prevents the court from assessing if the time spent on each individual task was reasonable. *Id.* at 948. While the Ninth Circuit has permitted a 20% deduction for block-billed entries, it has held that it is error for a district court to apply a 20% reduction to all of an attorney's requested hours because the reduction may only be applied to "those hours that were actually billed in block format." *Id.*

"A party complaining about attorney fees has a burden of stating their complaints with particularity." *Nat. Res. Def. Council v. Locke*, 771 F. Supp. 2d 1203, 1214 (N.D. Cal. 2011) (alterations adopted). The District provided 30[4] specific entries that they allege contained block billing. Opp'n 11 (citing McBroom Decl. Ex. A). Plaintiffs respond only that there are no instances "in which the Court is unable to assess the nature of the work performed." Reply 12. The Court has reviewed the entries identified by the District and agrees that Plaintiffs have, in most of the identified instances, combined multiple separate, distinct legal tasks under a single, cumulative time block. Because there is only one time total at the end of the line, the court cannot determine exactly how many minutes were spent on compensable tasks versus potentially non-compensable or clerical tasks. Additionally, multiple descriptions were vague or cryptic without contextual detail. The

---

[4] The District actually detailed 31 entries, but combined two separate entries on April 12, 2022 into one.

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 14

following table represents the billing entries that the District identified, showing the time and dollar amounts block-billed, including three entries the Court excluded.[5]

| Date | Hours | Dollars |
|---|---|---|
| 11-Feb-22 | 3.2 | $1,376 |
| 17-Feb-22 | 1.8 | $774 |
| 7-Mar-22 | 6.3 | $2,709 |
| 9-Mar-22 | 2.8 | $1,204 |
| 10-Mar-22 | 3.9 | $1,677 |
| 11-Mar-22 | 0 | $- |
| 15-Mar-22 | 2.8 | $1,204 |
| 17-Mar-22 | 1.9 | $817 |
| 24-Mar-22 | 3.1 | $301 |
| 25-Mar-22 | 5.3 | $2,279 |
| 29-Mar-22 | 0 | $- |
| 1-Apr-22 | 5.1 | $2,193 |
| 6-Apr-22 | 3.9 | $1,677 |
| 7-Apr-22 | 7.3 | $3,139 |
| 8-Apr-22 | 8.1 | $3,483 |
| 9-Apr-22 | 7.1 | $3,053 |
| 10-Apr-22 | 6.7 | $2,881 |
| 11-Apr-22 | 8.9 | $3,827 |
| 12-Apr-22 | 3.7 | $1,591 |
| 12-Apr-22 | 6.3 | $2,709 |
| 13-Apr-22 | 7.9 | $3,397 |
| 14-Apr-22 | 7.3 | $3,139 |
| 15-Apr-22* | 0 | $- |
| 16-Apr-22 | 9.7 | $4,171 |
| 17-Apr-22 | 7.9 | $3,397 |
| 21-Apr-22 | 6.4 | $2,752 |
| 22-Apr-22 | 5.3 | $2,279 |
| 25-Apr-22 | 6.2 | $2,666 |
| 26-Apr-22 | 4.3 | $1,849 |
| 29-Jul-22 | 14.3 | $6,149 |
| 29-Aug-22 | 2.9 | $1,247 |
| **Totals** | **160.4** | **$67,940** |

[5] The entry on March 11, 2022 was not block-billed, as it represented a single, unified, and continuous litigation task, with an explanatory parenthetical, rather than a prohibited bundling of unrelated actions. Similarly, the entry for April 15, 2022 represented a single litigation task in preparing for an upcoming hearing by reviewing a specific subset of evidence. The entry on March 29, 2022, while technically may be described as block-billed, was only 18 minutes, and the Court considers it *de minimus*.

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 15

The Court notes that there may be other entries that are block-billed, but the District did not identify them. The Court will adopt the District's proposal of 20% reduction of the above-identified block-billed entries, for a reduction of $13,588. *See, e.g.*, *Waters v. Mitchell*, No. C21-0087JLR, 2023 WL 3304217, at *12 (W.D. Wash. May 8, 2023) (reducing expended hours by 30%); *Thomas v. Cannon*, No. 3:15-05346 BJR, 2018 WL 1517661, at *3 (W.D. Wash. Mar. 28, 2018) (reducing the block-billed hours by 20%). Additionally, the billing records include a time entry on March 25, 2022, for Matthew Smith, who has not been identified as a billing attorney in this case. The Court will exclude the $301 billed for that time.

### 2.       Hours spent on the fee petition

The District argues that $50,000 in attorneys' fees for time spent on the fee petition and related pleadings is excessive given the nature of the litigation. Opp'n 11. The District disputes Plaintiffs' claim that it was properly served, and contends that the time spent on default motions was unnecessary and excessive. *Id.* at 11-12.

Time spent establishing and litigating a statutory right to attorneys' fees is fully compensable under settled Ninth Circuit law. *Camacho*, 523 F.3d at 981. The Court observes that the time spent on the fee petition and related default litigation was billed only by Mr. Gerard, and the Court has already determined that his billing rate should be reduced to $300 per hour, which will result in a necessary reduction of the fees related to the fee petition. The Court notes that it was required to order additional submissions by Plaintiffs because their motions and briefing were incomplete, but it does not find that the tasks billed were excessive under the circumstances of this case. The Court declines to perform any further "haircut" of the fees claimed for preparation and litigation of the fee petition.

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 16

As summarized above, Mr. Gerard's time entries totaled 115.7 hours for $49,751 based on a billing rate of $430 per hour. The reduced billing rate of $300 per hour results in billings of $34,710, which represents a reduction of $15,041.

### D.   Degree of limited or partial success

The District contends that Plaintiffs' fee request is unreasonable and should be reduced on the basis of their limited success. Opp'n 9. The District argues that of the seven issues Plaintiffs raised in their due process hearing request, the ALJ found in favor of the District on five of the issues and for the two claims on which Plaintiffs "partially prevailed," they were only awarded 8.25 hours of compensatory services. *Id.* Plaintiffs argue that they obtained substantial relief by prevailing on the central issue that drove the litigation. Reply 4.

Under the controlling framework established in *Hensley*, 461 U.S. 424, and applied to IDEA cases by the Ninth Circuit in *Aguirre*, 461 F.3d 1114, courts evaluate success by focusing on the qualitative importance of the issues won and their factual intertwinement with the lost claims, rather than a raw mathematical ratio. In this case, Plaintiffs successfully proved the core substantive violations of the case, i.e., that the District failed to implement the IEP during the extended school year period in 2021, and failed to implement the IEP during the entire 2021-22 academic year. ALJ Decision 62-63. Plaintiffs also successfully exposed systemic procedural violations regarding the District's failure to provide prior written notice and periodic progress reports. *Id.* While the ALJ scaled back the quantities and denied the "in-home" delivery location, the Plaintiffs successfully forced the District to provide the core compensatory education requested. *Id.*

While the ALJ did not find a global denial of "free appropriate public education" on the procedural counts, and found for the District on the remaining issues, all claims arose out of a

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 17

common core of facts and law. Every issue centered on the formation, tracking, and execution of the March 5, 2021, and May 2021 IEPs. Counsel could not possibly investigate the failed claims regarding goal measurement or IEP development without reviewing the same student records, analyzing the same progress logs, and examining the same school district witnesses required to secure the implementation victories on the substantive service delivery issues. Because the successful and unsuccessful claims are inextricably intertwined,[6] and because Plaintiffs secured meaningful substantive relief for I.P., the Court concludes that no reduction is warranted on the basis of limited success.

### E.    Summary of fee calculations

In sum, the Court makes the following reductions to Plaintiffs' requested fee award of $197,933.92:

- $83.21 discrepancy in sum of costs and fees;

- $1,634 related to prohibited services;

- $13,588 related to block-billing;

- $301 related to time entry for Matthew Smith, who has not been identified as a billing attorney in this case;

- $15,041 reduction on Mr. Gerard's fees.

The total reduction is $30,647.21, which results in an award of $167,286.71.

### V.    CONCLUSION

For the foregoing reasons:

1. Plaintiffs' Summary Judgment Motion for Attorney's Fees and Costs, ECF No. 28, is GRANTED IN PART;

---

[6] *See Hensley*, 461 U.S. at 448 (Brennan, J. concurring in part).

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 18

2. Plaintiffs' requested fee award of $197,933.92 is reduced by $30,647.21;

3. The Court awards Plaintiffs $167,286.71 in costs and fees.

4. Judgment will be entered by separate Order.

DATED this 1st day of June 2026.

Barbara Jacobs Rothstein
United States District Judge

ORDER GRANTING IN PART PLAINTIFFS' ATTORNEYS' FEES AND COSTS

- 19